Good morning, Your Honors. My name is Jonathan M. Bates. I'm appearing on behalf of the Appellant Gibson Brands, Inc. in this matter. Also appearing is Kurt Schuttinger. With the Court's permission, I would like to reserve three minutes in rebuttal. Your Honors, as set forth in our brief in front of the Court. One, whether the District Court erred in dismissing JHS for a lack of subject matter jurisdiction because of a lack of use in commerce as a predicate to the Court's subject matter jurisdiction in this matter. And two, whether the District Court erred in dismissing the appellee, Viacom, when it found that Gibson failed to state a claim against Viacom as a matter of law for secondary trademark infringement. With regard to JHS dismissal for lack of subject matter jurisdiction, Your Honors, after our initial brief in this matter, but prior to our answer brief in this matter, this Court in La Quinta worldwide held that use in commerce is not a precondition to subject matter jurisdiction, but rather an element of a claim under the Lanham Act. Additionally, Your Honor, we agree with JHS in this matter that concedes subject matter jurisdiction in its answering brief on pages one and two in its jurisdictional statement, in its issues presented, and in heading four on its summary of argument on page nine of that answer brief. We believe that that leaves two alternate arguments from JHS in this matter, that this Court dismiss this case for failure to state a claim or on summary judgment. With regard to the failure to state a claim, Your Honor, the District Court in this case denied to address the issue of a 12B6 motion to dismiss for failure to state a claim. And to that end, we believe that if they did consider it, that they would reach a different conclusion if they could not consider the disputed factual claims contained in a document outside of the pleadings, the declaration of Dennis Drum, a principal in JHS that indicated that JHS did not distribute the sponge bob flying the ukulele in U.S. commerce. With regard to the alternate argument for dismissal under summary judgment, we believe that this is just a premature issue, Your Honors, because as the moving party, JHS has not answered in this case. And therefore, as the moving party would not be able to meet the burden of summary judgment. Counsel, admittedly, the District Court decided this on the jurisdictional ground, and putting that aside for the moment, it went forward on the contributory issue on 12B6. Are we at liberty to, since the Court did have a 12B6 motion before it, to construe the pleadings on the issue of whether a cause of action has been stated, just a straight-out violation based upon the way the complaint itself was worded in terms of the use in commerce? In the District Court arguendo, based upon looking at the complaint, deciding it on the basis of 12B6 rather than 12B1, and say this was or was not adequately pleaded? We believe, Your Honor, that it was adequately pleaded. And as I said, the District Court would reach, if it couldn't rely on this... And I get your point. I know that's your position. My question is, are we at liberty under the case law to basically put aside the Court's 12B1 ruling, consider the complaint on a 12B6 basis? The District Court went to a different element, admittedly, in its 12B6 analysis. But can we look at the complaint to determine whether it states a cause of action or just straight violation of the law? Your Honor, I believe that you can. I don't have the site in front of me. Well, we usually can, but was the District Court clear that it was reviewing the complaint under 12B6? No, Your Honor, I believe it was not. Not 12B1, right? Yes. Usually, we do like to have, it's supposed to be a reviewing court. Correct, Your Honor. Like a ruling from the District Court. Correct, Your Honor. And there was not even a response of pleading in this case. There was not an answer in this case. Well, on a 12B6, you wouldn't need an answer. Correct, Your Honor, but we believe that we've pled adequate facts for our case. With regard to the second issue, if there are no other questions, whether the District Court erred in dismissing the appellee, Viacom, for failure to state a claim for secondary trademark infringement. In order to show secondary trademark infringement, Gibson also must show contributory trademark infringement. And that would require the inward conditions, one, that Viacom intentionally induced JHS to infringe on the Gibson Flying V trademarks, and or two, that Viacom continued to supply its trademarks after being placed on notice that JHS was using the Spongebob Flying V ukulele to engage in trademark infringement. Also, when a defendant supplies an infringer with a service rather than a product, the court must consider the extent of control exercised by the defendant over the third party's means of infringement. In the case, in this case, Your Honor, Gibson pled, specifically, Viacom intentionally induced JHS to infringe on the Gibson trademarks by controlling and approving the products that infringe on the Gibson trademarks and collecting license fees for the same. Gibson believes that if you, at this court, would apply the 12B6 standard in Twombly to the pleadings in this case, that Gibson pled specific facts, if accepted as true, that state a claim for a leaf that is plausible on its face. Isn't the issue, though, the Twombly plausibility requirement, based upon the facts that were before the court as alleged, that you had, basically, everything was occurring offshore, the only U.S. involvement, I guess, came from counsel's request for something, as I understand it. If the court had that before it, would that not be enough to make a determination about the use and commerce requirement? Well, Your Honor, our position is that we're, I guess, we're not to that point yet in the fact-finding of the case. All we have here is, we believe, a well-pleaded complaint and then a motion to dismiss without anything further. We have the only thing contrary to our complaint, which alleges the secondary infringement, is this declaration that there was no use in U.S. They moved to dismiss under 12B6, right? Correct. Admittedly, on the contributory issues. But the court had that before it, right? Correct. And based upon that information, I guess you're saying there's no discovery at this point, who knows what else was involved? It's premature. There simply was not enough for the court to make the determination? Yes, Your Honor. This matter was dismissed, as Your Honor said, on a 12B6 failure to state a claim, because the district court found that there were no plausible facts to infer that Viacom controlled or monitored the Spongebob Flying V. Ukuleles through the license agreement. Viacom claimed that it was a limited vanilla license agreement, that they had little control. They also attached a heavily redacted license agreement between JHS and Viacom that Judge Pragerson, in fact, relied upon in his order to dismiss. We argue, Gibson argues, that it's more than just a plain vanilla agreement with limited control to protect the trademarks. In fact, the record shows that there were at least two trademark agreements in this matter, the heavily redacted trademark agreement and a separate trademark agreement with different terms that gave Viacom control over the design, the promotion, the timeline and release of the product, the location of manufacturing, control over quality control, location of testing, frequency of testing, right of rescission, the location of the sale, the language in the materials, the product sampling, the product inspecting, the governmental law that controlled the license agreement, which was New York City, or New York State, I apologize, and the copyright placement on the product, which again, your honors, we say is well beyond a vanilla license agreement. As did the second inward prong that Viacom continued to supply its trademarks to JHS after notice, Gibson pled actual and constructive notice to Viacom of the infringement and pled as well that Viacom continued to supply its trademarks after notice. Pursuant to the Lockheed case, Gibson has established and pled that Viacom had significant and direct control over the instrumentality and means of infringement by the control that I just stated from the additional license agreement. In the case from the district court, we believe it erred by requesting that Gibson also establish, by removing Viacom's trademarks, that there would be more than a practical effect on stopping the infringement. We believe that that was more than the Lockheed case. Gibson believes that Viacom's trademarks are not an ancillary service in this case. Your honors, if the, we have a single product here. You have the SpongeBob Flying V ukulele. There's not an ancillary service with this guitar. It's SpongeBob Flying V ukulele. And I will reserve the remainder of my time if there are no questions.  My name is Brent Davis. I represent John Hornsby SKUs and Company Limited, who I'll be referring to as JHS. I'm going to use eight minutes of the allotted time. My colleague who represents Viacom will be using the remaining seven. JHS concedes that the LaQuinta holding by this court does take the subject matter jurisdiction issue and put it to rest. However, in the underlying court, JHS had also moved for dismissal pursuant to 12b-6, and as it presented additional facts, also requested if it wasn't enough to dismiss on 12b-6, that it be converted to a Rule 56 motion. These motions were fully briefed. Gibson never made any objection about the conversion to a Rule 56 motion. Essentially what will happen, if this court remands, is that the district court is going to make the same factual analysis. There are sufficient facts that can be considered under 12b-6 that would support the dismissal for failure to state a claim because there was no use in commerce. And if those facts weren't sufficient, the additional facts can be reviewed under Rule 56. What specific declarations or documents would you refer the court to in our determination of whether a cause of action has been pleaded under 12b-6 or slash Rule 56? What should we look at? Under 12b-6, the specific documents to look at are the license agreement. Gibson attached it to the amended complaint. The websites where they claim these were offered for sale, besides being referenced in the complaint, therefore being important to the complaint, I believe pronounced were attached. And those documents alone, and then the actual just pleading itself where... The pleading meaning the complaint? The amended complaint where counsel admits that they're the ones that jumped through the hoops to purchase these instruments from overseas. I think those are the most important points under 12b-6. And then if you extend to look at this under a Rule 56 analysis, there are the declaration of Dennis Drum, who was the chairman. I'm sorry, he's a C-suite equivalent of the U.K. Spell his last name. D-r-u-m-m. Is it clear from the district court's order when the court granted the 12b-6 that he only looked at the documents you just articulated that were relevant, that you could on a 12b-6? No. But he does break up, and the district court did make very clear in what portions of his decision what it relied upon. There are references to what you can learn just from visiting those websites, that they're all in foreign currency, that they were all located overseas, that the license agreement between Viacom and JHS specifically excluded the United States. All of those basis, the district court was very clear on. When he relied upon extrinsic evidence outside the pleadings and the documents that would be permissible to look at, he was very clear on that as well, which is why, as you can see in the JHS brief, we split it up into those two sections, that this is what the court found that would be allowable under 12b-6, and here are the additional facts that would be considered under Rule 56. Well, it looks like he ruled under 12b-6. No. When it came to JHS, he ruled under 12b-1, which at the time... 12b-1. Right, which at the time was pre-La Quinta, but he did not rule on 12b-6. Because the court reached that there was no subject matter jurisdiction, which was the law at the time, the court declined to rule on the 12b-6 motion at all, which means that... That suggests that he was reluctant, in light of all the factual record that you put in front of him, that he was reluctant to say on the complaint they failed to state a claim. No. I think it was a situation where since the first portion, the 12b-6 analysis, was dispositive, there was no reason to reach. He didn't deny those motions. No. He just didn't reach them, so they're pending in the district court. Right. The question that Judge Smith asked earlier is, you don't have any argument on the 12b-1 in light of La Quinta. So should we take a look at the complaint and only the documents that are appropriate on a 12b-6 and say, well, nonetheless, you failed to state a claim for relief against your client? Yes, Your Honor. The Ninth Circuit has made it clear it has the authority to do that. Under Johnson v. Riverside Health Care System. We probably have the authority, but should we exercise that authority? Yes, Your Honor. Because oftentimes you'll see our cases and say, well, we're a court of review, not a district court in the first instance. Right, and I do appreciate that, Your Honor, but it would just be a tremendous waste of judicial resources on both the appellate court. Explain to me why we should just do the 12b-6 analysis ourselves. Because the facts would be the same as presented by the district court. If you remand this back to the district court, JHS will renew its motions under 12b-6. It is abundantly clear from the complaint and those additional documents we can take note of. Absolutely. That their allegations do not plausibly establish a claim for infringement against your client. Absolutely, Your Honor. The finding, the holding that would have to occur, is that an individual in the United States could go to any website from any retailer anywhere in the world, purchase something, jump through hoops to have it shipped to the United States, and that would be used in U.S. commerce. Effectively, that finding would eliminate the territorial nature of trademarks, which cannot be disputed. What makes this situation even more egregious is that a finding of use in commerce would mean that a party or its counsel can go to any website in the world, purchase a product that could be completely non-infringing in that territory, ship it to the United States, and then that would create use in commerce. This is very analogous to well-settled case law, that if American citizens buy something abroad and brings it back, that that can't be used in commerce. Thank you. Good morning, Your Honors. My name is Jonathan Zabin. I'm representing Viacom in this matter. First, just to clear up the procedural confusion, Viacom's motion with respect to the First Amendment complaint was just a 12B6 motion, and the judge below, Judge Pragerson, only regarded it as a 12B6 motion and did not look outside of the complaint or those things attached to the complaint. He didn't rule on it? Yes, he did, Your Honor. On Viacom's motion? On the contributory. On contributory infringement. So Viacom moved against the First Amendment complaint solely on contributory infringement because that was all that was alleged against Viacom was secondary infringement. But you're saying that for your purposes, you believe that the court should affirm the district court's ruling under 12B6 on the collateral claims which would go away if ultimately prevail on 12B6, right? On the other straight claim. Yes, Your Honor. In effect, the only claims against Viacom are contributory infringement and contributory secondary infringement. Those were decided simply on 12B6 in looking solely at the complaint and those things referenced in the complaint. He did it, as I understand, just simply based on the license that Viacom extended for SpongeBob, SpongeBob, whatever his name is. SpongeBob SquarePants, Your Honor. SpongeBob SquarePants. I'm the wrong generation also, Your Honor. I sympathize with the problem. I don't. I haven't seen that particular cartoon or whatever it is. You have. I haven't seen it. I've seen it, too. You know, I'm not. After my kids. I'm sorry, Your Honor. The question was. No, so it's, as I understand it, the district court dismissed it based, primarily based on the fact that, as counsel said, this was nothing more than a plain vanilla license. Yes, Your Honor, with one other exception. Which requires the licensor to reserve some control to protect the trademark. That's correct. And all of the control was directed at the licensed product, which was the SpongeBob SquarePants. It was not with respect to the allegedly infringement instrumentality, no pun intended here. Viacom, JHS manufactures many musical instruments in all styles. Viacom could well have manufactured this exact same musical instrument without the SpongeBob trademark on it. Viacom's controls, like any licensor, the concern is the use of its mark. And that's what all the controls are aimed at. That's what the license showed. And I think what Judge Pragerson looked at was the terms of the license and the lack in the complaint itself of any pleaded fact of additional control above the fact that the license existed. So from your perspective, the claim against your client were for contributory infringement or vicarious infringement, right? That's correct, Your Honor. And I gather you're saying that whatever we do in terms of analyzing whether we should make a 12B6 determination on straight infringement, you want us to affirm the district court's ruling on 12B6 on the contributory infringement and vicarious? That's correct, Your Honor. They are two different questions. I believe, with all due respect, it would be error to find that there's a claim for infringement here because I think there is a subject matter jurisdiction question still remaining, even after LaQuinta. I think that there is certainly a question whether there's a use in commerce. But irrespective, if you kept JHS in on that, Viacom is not a contributory or vicarious infringer, and that was squarely found by Judge Pragerson. One of the anomalies here, of course, is the license simply provided for the use of the mark explicitly outside of the United States. One of the things that Viacom is being accused of is failing to prevent infringement, you know, this goes to the contributory or vicarious infringement, failing to prevent infringement in the United States when the license itself specifically said that anything containing the Viacom mark cannot be marketed or sold within the United States. And licensors do this because trademarks and copyrights are licensed by territory throughout the world. This is the way the business world works because countries have different copyright regimes, they have different trademark regimes, and you have different licensees in these various territories. Viacom was very specifically not licensing in the United States, and yet counsel proclaimed it simply by going on the internet in a number of countries, I don't remember if there were seven different countries, and causing this to be shipped back into the United States, and this is the only allegation of any commerce in the United States or any sales. They're saying that somehow Viacom caused this infringement in the United States. I think you're on. I guess wasn't it also that if you were to go on the internet, you could find these instruments at third parties. Yes, they were not JHS sites. They were not his websites. That's correct. Is that right? My understanding is they were all third-party resellers, so JHS didn't have any control over these third-party sellers either. What Gibson is looking to do is basically say a U.S. trademark and presumably a copyright is enforceable everywhere in the world because given the modern world of internet and travel, you couldn't license by territory anymore. All of this would fall away. Individual national copyright and trademark regimes would fall away. That's the extension that's in effect being proposed here. Just very briefly, Your Honor, I know that we were not dismissed on subject matter jurisdiction, and I know that JHS has seemingly conceded it. With all due respect, I think the court may want to consider the subject matter jurisdiction because I think LaQuinta did not overrule StarKist, and there are very different issues involved when you're talking about whether the court has subject matter jurisdiction on simply foreign activity. And that, I think, was not reached by the Supreme Court. Well, that's not so much jurisdiction. It's just that the statute doesn't extend that far. But that's it. But jurisdiction for basic federal court jurisdiction is under U.S.C. 1331, which says that jurisdiction must arise under the laws of the United States. And solely foreign activity here, if the court extends jurisdiction to this. In this sense, we're talking about the power of the court to act. Well, or the court does have jurisdiction under the Trademark Act. The question is whether or not the Trademark Act extends extraterritorial. Well, under StarKist. And it may not under certain circumstances. Probably in limited circumstances, it might if you meet the test. Well, StarKist seemed to indicate, Your Honor, which was this court, which was not overruled by LaQuinta, that the analysis of territoriality was subject matter jurisdiction, when the court should exercise subject matter jurisdiction. And it is important whether this is decided at subject matter jurisdiction or in summary judgment because the court would literally be dragging in, unless it's considered these foreign questions are on subject matter, the court would be dragging in foreign companies, just purely foreign activity to go through discovery to resolve something that should be resolved right in the beginning.  Thank you, Your Honors. Thank you. Just initially, Judge Smith had asked me about whether the dismissal may be affirmed, and it may be affirmed on any grounds supported by the record,  but it's the general rule of the Federal Appellate Court that you do not consider issues that were passed upon below. And counsel... And I guess what I struggle with here is, admittedly, Judge Pregerson's analysis went to the 12B1 issue, but the same issues in terms of extraterritoriality are exactly the ones, as I see it, that you would face on a straight claim on the trademark. In other words, I'm wondering whether the district court hasn't already analyzed the issues that we would need to analyze. Were we to have... Were the district court to have considered the 12B6 motion on JHS initially? Didn't he analyze the very issues that would need to be considered in that circumstance? He may have, Judge, but I believe that he relied on his order on a document that he would not have been able to rely upon. Okay. All right. So you're saying that he considered in that analysis items that he would not normally have before him on the 12B6 motion. Correct. He considered in the use in commerce whether he considered the declaration of a principle, a JHS principle. So from your perspective, the appropriate thing to do was you all... Everybody conceded the commerce issue now under Laquita except for Viacom on the contributory matter. But you're saying send this back to the district judge, let him take a look at the 12B6 issue in the first instance and Rule 56 and let it go as it may. Is that correct? We would accept that, Judge, but we... Well, I mean, obviously you'd like us to rule that there is no problem. No, I understand. And then, Your Honor, with regard to the purchase of the ukuleles, the SpongeBob Flying V ukuleles in this case, Gibson does allege purchases in U.S. Commerce. And when Judge Pragerson addresses the infringing activities within the United States, he doesn't address whether evidence, whether it was pled, whether it was alleged. He addresses whether the evidence was provided, and that would not be the standard. It would be whether we pled use in U.S. Commerce, which we did in this case. And with regard to the use in... If I may briefly address Viacom's... Thirty seconds. Yes, sir. Just briefly address Viacom's contention that we're asking this to apply to any foreign seller. Again, we've alleged use in the United States. We've shown the control that Viacom had in this case pursuant to the second, which was another thing that the judge did not address in this case, was the second license agreement. There was this original redacted license agreement, but the second license agreement that we offer had control, and we would ask that the order dismissing Viacom also be reversed. Thank you, counsel. Thank you. The case is here. You will be submitted. The court will take a brief recess before the final case of the morning. All rise.
judges: Reinhardt, Paez, M. Smith